# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

GENIUS SPORTS LTD.,

     *Petitioner*,

  v.

DRAFTKINGS INC.,

     *Respondent*.

Civil Action No. 1:25-mc-91403

---

**DECLARATION OF GUY RUTTENBERG IN SUPPORT OF GENIUS SPORTS LTD.'S
MOTION TO COMPEL DRAFTKINGS' COMPLIANCE WITH SUBPOENA**

I, Guy Ruttenberg, declare as follows:

1. I am an attorney licensed to practice in the State of California. I am also admitted *pro hac vice* in the Eastern District of Texas as counsel for Petitioner Genius Sports Ltd. (Genius) in the litigation brought by Plaintiff *Sportscastr Inc. d/b/a Panda Interactive* ("PANDA"). That litigation is styled *SportsCastr Inc. v. Sportradar Group, AG* (E.D. Tex.). I am a Principal at the law firm of Ruttenberg IP Law, A Professional Corporation. If called as a witness, I could and would testify competently as to the facts set forth below, as I know each to be true based upon my own personal knowledge or upon my review of the files and records maintained by Ruttenberg IP Law, A Professional Corporation, in the regular course of its representation of Genius. I submit this declaration in support of Genius' Motion to Compel.

2. In a related case, PANDA has raised similar claims against Sportradar Group AG, and Sportradar AG ("collectively Sportradar"). That action is captioned as *SportsCastr Inc. v. Sportradar Group, AG*. On October 15, 2024, the cases were consolidated for purposes of consistency, and the '472 Case was designated as the lead case for docketing purposes.

1

3.      On March 19, 2025, PANDA served DraftKings with a subpoena for documents and a Rule 30(b)(6) deposition, with an amended subpoena served on May 1, 2025.

4.      PANDA seeks 37 categories of documents. Among other things, Request No. 4 seeks "All Documents concerning [DraftKings'] purchasing and/or licensing of Official Sports League Data, Video Feeds, or Sports Betting App Technology from anyone, including all negotiations, research, and documents reflecting the decision to purchase and/or license from each entity." On its face, this Request would encompass communications with both the Plaintiff and DraftKings. Communications with and/or about PANDA are also potentially responsive to other Requests in the May 1 subpoena, including Request Nos. 6 and 28-29.

5.      PANDA's amended deposition subpoena sought testimony on 26 topics including "negotiation" for "Sports Betting App Technology" and any "ownership interest You have in Genius or Sportradar." The deposition was noticed for July 24, 2025.

6.      On May 1 and May 28, 2025, DraftKings' counsel copied me in serving its responses and objections to PANDA's subpoenas, which DraftKings designated as highly confidential under the Protective Order entered in the Texas case.

7.      In its responses to the document subpoenas, DraftKings objected to every document request and indicated it would only produce executed agreements. At that time, DraftKings' counsel also informed me that DraftKings did not intend to produce further documents beyond those identified in the objections. In response to the deposition, DraftKings stated in response to each topic that it would not designate a witness, while offering to meet and confer. DraftKings' counsel also told me that I would be included in all discussions and communications with PANDA's counsel regarding the subpoenas.

8.     On June 30, 2025, I was copied on a significant production of documents from DraftKings to PANDA. I later learned that DraftKings' counsel separately engaged with PANDA's counsel without including Genius in those discussions.

9.     On July 8, 2025, I was invited to attend a meet-and-confer between DraftKings and Genius Sports. On that call, DraftKings' counsel explained that its June 30 production included communications from the files of two DraftKings custodians. It was explained that the production (which consists of thousands of documents) encompassed PANDA's communications with/about Genius and SportRadar. It did not include communications with or about PANDA.

10.    On the July 8 meet-and-confer, DraftKings' counsel stated also that they had identified 2-3 custodians likely to have had communications with or about PANDA, and that they were in the process of producing those materials.

11.    On July 24, 2025, DraftKings' counsel copied me on an email to PANDA's counsel proposing a July 29 meet-and-confer. On the July 29 call, when PANDA confirmed its intention to proceed with a deposition, DraftKings stated that it would not agree to a deposition based on the full set of topics but might seek client authorization if the scope was limited to two or three hours and a narrower set of topics. Again, I requested to be included in any further discussions concerning documents or a deposition. I also noted that it is improper under Rule 45 to serve a subpoena on 26 topics, provide notice to other parties, and then privately negotiate a narrowed scope without informing the other parties.

12.    On August 8, 2025, I had a call with counsel for DraftKings, who informed me— for the first time—that DraftKings intended to provide a witness for a deposition to occur on August 19, 2025, based on PANDA's earlier-served subpoena. At that point, DraftKings did not inform me which of the previously noticed 26 topics would be included in that deposition. During

the August 8 call, DraftKings invited Genius to serve its own subpoena if we intend to participate in the forthcoming deposition. DraftKings also disclosed to me at that point that it had decided not to proceed with producing its PANDA-related communications.

13.    Later that day, on August 8, 2025, Genius served a subpoena *duces tecum* and a deposition subpoena to DraftKings. The subpoena seeks (1) any documents DraftKings had produced or would produce to any other party in the litigation, (2) all documents and communications pertaining to PANDA, and (3) all documents and communications exchanged between DraftKings (including its in-house or outside attorneys) and Plaintiff (including its in-house or outside attorneys) relating to the parties or the litigation. Attached hereto as **Exhibit 1** is a true and correct copy of the August 8, 2025 subpoena *duces tecum* served on DraftKings.

14.    Attached hereto as **Exhibit 2** is a true and correct copy of the August 8, 2025 deposition subpoena on DraftKings. The subpoena is a cross-notice that requires DraftKings to designate a witness as to the original 30(b)(6) topics in PANDA's subpoenas, as well as on an additional topic regarding any ownership interest or relationship DraftKings may have with PANDA or its affiliates.

15.    On August 11, 2025, DraftKings confirmed receipt of Genius' subpoena and requested a meet-and-confer. On August 12, 2025, I met and conferred with DraftKings' counsel. Initially DraftKings suggested that there were few documents responsive to Genius' August 8 subpoena and proposed running the term "PANDA" across the files of the two previously searched custodians. I reminded DraftKings' counsel that on July 8, DraftKings had stated that 2-3 different custodians were likely to have relevant PANDA communications. Ultimately, during the August 12 meet-and-confer, DraftKings declined to confirm whether additional responsive documents

exist, and did not agree to produce any documents other than those that had already been produced to PANDA.

16.     I sent DraftKings counsel an email on August 12 after our meet-and-confer. For the document subpoena, I asked DraftKings to identify the individuals most likely to have had communications with PANDA from 2019 to the present (including in-house counsel). I also specifically identified three current DraftKings employees whose documents likely include communications with PANDA and proposed a narrow search for emails containing PANDA-affiliated domains in the to/from/cc/bcc fields only. I also asked DraftKings to confirm whether it had provided all communications involving DraftKings and PANDA counsel—both in-house and external.

17.     In my follow-up email of August 12, I also explained that Genius would agree to limit its deposition topics to the four identified in DraftKings' August 11 email (with one clarification), on the condition that DraftKings also produces the requested documents and prepare its witness to testify regarding specific email communications with PANDA.

18.     On August 14, 2025, in response to a follow-up inquiry from DraftKings' counsel, I confirmed that the emails to be used in questioning would fall within the scope of the four agreed-upon topics (from DraftKings' August 11 email), while reserving the right to address any subject matter raised in DraftKings' forthcoming document production.

19.     Later that evening, on August 14, 2025, at 11:06 p.m. ET, DraftKings' counsel sent a letter further addressing Genius' subpoenas. In that letter, DraftKings refused Genius' document requests. DraftKings acknowledged that there were communications "between multiple DraftKings employees and multiple Sportscastr/PANDA employees," but DraftKings declined to conduct the searches for responsive documents, including the searches it had previously

represented it was running as of July 8, 2025. While objecting to Genius' subpoena on the basis of "undue burden, among other reasons," DraftKings did not substantiate any burden or explain the other unspecified objections. DraftKings also declined to confirm whether it would produce communications involving DraftKings' and PANDA's legal counsel.

20.     In its late-night August 14 letter, DraftKings also purported to further (unilaterally) narrow the topics of examination. DraftKings explained that its witness would not provide testimony on (i) DraftKings' communications with PANDA and (ii) any ownership interest or relationship between DraftKings and PANDA.

21.     On August 17, 2025, the parties conducted a further meet-and-confer, which was attended by counsel for DraftKings and Genius, as well as counsel for PANDA and SportRadar. During that meet-and-confer, DraftKings suggested it would consider a supplemental document production, but that such production could not occur before the close of fact discovery. DraftKings suggested that it might consider a supplemental deposition on additional topics that also could only occur after the close of fact discovery, but DraftKings insisted that it would continue with the scheduled deposition on August 19 covering only the narrowed topics identified in DraftKings' August 14 letter. I protested these limitations.

22.     On August 17, 2025, DraftKings served written responses and objections to the document subpoena. DraftKings designated those responses and objections as highly confidential under the protective order.  Regarding Request No. 1, DraftKings confirmed that it had produced to Genius, and will continue to produce to Genius, any documents it produces to subpoenas from other parties. Regarding Request No. 2, DraftKings asserts that it "will not produce documents in response to this Request as drafted," but offered to continue meeting and conferring. For Request No. 3, DraftKings responded that it "will not produce documents in response to this Request."

23.    A DraftKings employee appeared for a deposition on August 19, 2025. DraftKings designated that transcript as highly confidential under the protective order.

24.    At the outset of the deposition. DraftKings' counsel announced that the scope of the witness' testimony would be limited to the three topics identified in the August 14 letter from DraftKings' counsel. I objected, while noting that it is inappropriate for a deponent to dictate the scope of its own topics, particularly without a protective order. Nonetheless, DraftKings insisted that the witness was not prepared to answer questions as the corporate representative on the other topics.

25.    During the deposition, I repeatedly asked that PANDA submit a copy of the operative subpoena and/or deposition notice forming the basis of the deposition, but PANDA did not present any such subpoena or deposition notice.

26.    During his deposition, the DraftKings witness repeatedly stated that he was not prepared (and not knowledgeable) regarding DraftKings' interactions with PANDA. When presented with a few communications produced in the underlying litigation, the witness explained that he had not been able to prepare and could not answer those questions. Nor was he prepared to address DraftKings' relationship with and/or ownership interest in PANDA or its affiliates.

27.    During and after the deposition, I continued to confer with DraftKings regarding a production in response to Genius' subpoena. On August 20, 2025, DraftKings proposed a further production, but declined to specify a date certain for that production. Earlier today (on August 22, 2025), DraftKings informed me that it intends to produce the documents requested by Genius this after. However, Genius will not have an opportunity to review the documents (even if they are produced today) to confirm compliance before the deadline for filing its motion to compel.

28.     During and after the deposition, I also continued to meet and confer with DraftKings regarding a potential further deposition and/or a declaration to address the gaps in the witness' testimony. On August 20, 2025, DraftKings suggested it may be amenable to a further deposition. Earlier today (on August 22, 2025), DraftKings' counsel informed me that DraftKings continues to investigate the matter.

29.     I declare under penalty of perjury that the foregoing is true and correct.

Executed this day, August 22, in Los Angeles, California.


Dated: August 22, 2025                     /s/ *Guy Ruttenberg*
                                           Guy Ruttenberg
                                           California State Bar No. 207937
                                           1801 Century Park East, Suite 1920
                                           Los Angeles, CA 90067
                                           Telephone: (310) 627-2270
                                           guy@ruttenbergiplaw.com
                                           **Counsel for Genius Sports Ltd., et al.**